BURR MATTICE, Respondent, v. HENRY WILCOX, Appellant.

1. LIBEL — ATTORNEY AT LAW — CHARGE OF PROFESSIONAL INCAPAC-
ITY. A publication which, in effect, charges an attorney at law with
incapacity to perform the ordinary duties of his profession in a given
class of actions (as, e. g., with incapacity to defend actions of negligence
brought against a municipal corporation), in regard to which he has held
himself out as capable by accepting employment therein, is equivalent to
a charge of general incapacity in his profession, and so actionable as libel-
ous per se, without allegation or proof of special damage.

2. INNUENDO — DIFFERENT MEANINGS — SUBMISSION TO JURY. If the
words constituting an alleged libel are in all possible senses libelous per
se, although capable of different meanings, some of which are graver in
their nature than others, and the complaint contains an innuendo which
charges all the possible meanings, it is not error of which the defendant
can complain if the court charges the jury that the language has the
milder meaning only, and does not include the graver meanings, instead of
submitting to the jury all the meanings charged by the innuendo.

3. MITIGATING CIRCUMSTANCES. To constitute mitigating circum-
stances, in an action for libel (aside from the prior acts or publications of
the plaintiff tending to exasperate the feelings of the defendant, and which
do not exist in this case), the facts, while not proving the truth of the
charge, must tend in some appreciable degree towards such proof; they
must be connected with or bear upon the defamatory charge, and must
tend to disprove malice by showing that the charge was made in the hon-
est belief that it was true, with some reason for such belief, and without
actual malice or evil design.

4. PRIVILEGED COMMUNICATION. A publication, open to the meaning
of charging a village officer with criminality in his office and with incom-
petency in his professional capacity as an attorney at law, in which
capacity he had been employed on behalf of the village, is not rendered a
privileged communication by the fact that it was contained in a circular
the balance of which was upon general village subjects which the writer
was justified in referring to, written and procured to be printed by a tax-
payer and distributed among the citizens of the village just prior to a
charter election for village trustees.

5. MEANING OF LIBELOUS LANGUAGE — SUBMISSION TO JURY. The
submission to the jury, in an action for libel, of the question whether the
alleged libelous language does not have a meaning, of which it is capable
and which is not strained or unnatural, and which, if found, is declared
by the court to be actionable, is not rendered erroneous by the fact that
the language is, also, susceptible of an innocent meaning, provided such
innocent meaning is, also, presented to the jury to find, with the instruc-
tion that if found the language is not actionable.

Reported below, 71 Hun, 485.

(Argued November 26, 1895; decided December 10, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made September 12, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict and also affirmed an order denying defendant's motion for a new trial.

This is an action to recover damages for an alleged libel published by the defendant of and concerning the plaintiff.

The publication was made by the defendant in the form of a circular which he procured to be printed and which he caused to be circulated among the citizens of Oneonta just prior to a charter election for trustees of the village. The plaintiff was an assessor of the village, and being an attorney at law had been frequently employed by the village authorities to attend to its law business and to defend suits brought against it to recover damages by reason of the alleged negligence of the village agents in caring for the streets. Judgments had been obtained against the village in some such suits. The following is the circular. Paragraphs two and eight are the only ones which concern the plaintiff.

" How TO MAKE BUSINESS GOOD IN ONEONTA, N. Y.
" No. 1.          ONEONTA, N. Y., *February* 1, 1890.

" 1st. Bond the town for $11,000 to build a bridge over the river.

" 2d. Make Burr Mattice Attorney for the village so that every person that gets spanked on the ice will be able to obtain a judgment of from $1,000 to $10,000 against the village.

" 3d. Vote $4,000 every year for 31 electric lights.

" 4th. Pay the Water Company $30 each for 100 or more hydrants, for each and every year.

" 5th. Bond the village every year for $20,000.

" 6th. Vote to bond and pave.

" 7th. Have the trustees levy the full two per cent because the *law allows it.*

79

" 8th. Elect Burr Mattice and Henry Potter assessors to put up the valuation so that the trustees can rob the taxpayers on the two per cent levy.

" 9th. To *please* the trustees, vote all the special taxes you can over and above the two per cent that the charter permits.

" 10th. Mortgage the village with six fool trustees to throw away moneys extorted from the taxpayers.

" 11th. If any man has the·manhood and courage to expose the weakness or rascality of the trustees, or any one in office, screen, conceal, cover up, divert the attention of the people from the wrongdoers, have him called a crank, a chronic growler, and ' ought to be despised by every man, woman and child in the village.'

" And by the way, what Oneonta needs most at the present time is one able, honest, independent newspaper, that will defend the poor mortgaged taxpayers of this village.

" HENRY WILCOX."

A verdict for plaintiff having been affirmed at the General Term, the defendant has appealed here, and his counsel now argues several propositions of law which it is claimed should be decided in defendant's favor and which should secure a reversal of the judgment against him. Several of them are referred to in the following opinion.

*Isaac H. Maynard* for appellant. Whether the words set forth in the second paragraph of the circular referred to were libelous or not depended upon their construction and meaning, which were questions for the consideration and determination of the jury, and the trial court erred in stating to the jury that these words, upon their face, charged the plaintiff with professional incompetency and incapacity, and that the only question for them to determine upon this branch of the case was the question of damages. (Townshend on Libel [4th ed.], 486, § 284; *Dolloway* v. *Turrill*, 26 Wend. 383; *Detterer* v. *Bushby*, 15 Penn. St. 466; *P. R. Co.* v. *McCurdy*, 114 Penn. St. 554; *Regina* v. *Bradlaugh*, L. R. [3 Q. B. Div.] 607; *Pinnock* v. *O'Neil*, 63 Penn. St. 263; *Gregory* v. *Atkins*,

42 Vt. 237; *Rogers* v. *Cline*, 56 Miss. 808; *Doyley* v. *Roberts*, 3 Bing. [N. C.] 835; *Tomlinson* v. *Brittlebank*, 1 H. & W. 573; *Skinner* v. *Grant*, 12 Vt. 456; *Sibley* v. *Tomlins*, 4 Tyrw. 90; *Thompson* v. *Grimes*, 5 Ind. 385; *Mosher* v. *Stoll*, 20 N. E. Rep. 752; Newell on Slander, 628, § 38; *Hemmens* v. *Nelson*, 138 N. Y. 530; *Walker* v. *T. Co.*, 29 Fed. Rep. 827; *Van Vechten* v. *Hopkins*, 5 Johns. 221; *King* v. *Horne*, Cowper, 184; *People* v. *Croswell*, 3 Johns. Cas. 360; *Foot* v. *Brown*, 8 Johns. 63; *Lynde* v. *Johnson*, 39 Hun, 16; *Ronnie* v. *Ryder*, 8 N. Y. Supp. 5; *Clarke* v. *Anderson*, 11 N. Y. Supp. 729; *Sanderson* v. *Caldwell*, 45 N. Y. 398; *Hayes* v. *Ball*, 72 N. Y. 418; *Cruikshank* v. *Gordon*, 118 N. Y. 198; *Woodruff* v. *Bradstreet*, 116 N. Y. 217.) The trial court erred in submitting to the jury the question whether the words in the eighth paragraph of the circular were libelous. (Starkie on Libel, 482, § 446; Newell on Defamation, 629, § 39.) The publication was privileged as to both alleged charges, and the court should have so charged. (*Hamilton* v. *Eno*, 81 N. Y. 124; *Klinck* v. *Colby*, 46 N. Y. 427; *Lewis* v. *Chapman*, 16 N. Y. 369; *Van Wyck* v. *Aspinwall*, 17 N. Y. 193; *Ormsby* v. *Douglass*, 37 N. Y. 479; Townshend on Slander & Libel, 125, 249, 429; *Cooper* v. *Greely*, 1 Den. 358.) The trial court erred in its charge to the jury that the first paragraph complained of, numbered 2 in the article, was undefended and unmitigated, and that some damage should be rendered for it, and that plaintiff was entitled to exemplary damages therefor. (*Klinck* v. *Colby*, 46 N. Y. 431; *Hamilton* v. *Eno*, 81 N. Y. 116; *People* v. *Seaman*, 6 N. Y. S. R. 765.) If the defendant wrote the article complained of without any malicious intention to injure the plaintiff, then inasmuch as the article dealt with matters of wide public importance, affecting the interest of the defendant and other taxpayers, the defendant had the right to criticise the acts and conduct of the plaintiff, and it was for the jury to determine whether or not he had in the article complained of gone beyond the limitation of a proper criticism. (*Ormsby* v. *Douglass*, 37 N. Y. 479; 16 N. Y. 373; Starkie on

Slander, 242, § 269; *Lewis* v. *Chapman*, 16 N. Y. 375.) It was error to exclude the testimony of the defendant in response to the questions relating to the general opinion of the public as to plaintiff's official acts. (13 Am. & Eng. Ency. of Law, 440; Townshend on Slander & Libel, 256; *Root* v. *King,* 7 Cow. 634; *Blackingstaff* v. *Perrin*, 27 Ind. 527; *Matson* v. *Buck*, 5 Cow. 499; *Cameron* v. *T. Assn.*, 27 N. Y. S. R. 910; *Dolevin* v. *Wilder*, 34 How. Pr. 488.) It was error to exclude questions bearing directly upon the good faith of defendant, and as to whether the publication was malicious or was based upon cause of complaint, either actual or supposed. (*Cameron* v. *T. Assn.*, 27 N. Y. S. R. 910; Townshend on Slander, 256; *Dolevin* v. *Wilder*, 34 How. Pr. 488.)

*Alfred C. Tennant* and *Douglass W. Miller* for respondent. The words set forth in the second paragraph of the circular are clearly libelous *per se*, and the trial judge did not err in so holding. (*Mattice* v. *Wilcox*, 36 N. Y. S. R. 914; 129 N. Y. 633; 71 Hun, 485; *Moore* v. *Francis*, 121 N. Y. 190; *Sanderson* v. *Caldwell*, 45 N. Y. 398; *Moore* v. *Bennett*, 48 N. Y. 472; *Carpenter* v. *Hammond*, 1 N. Y. S. R. 551; *Bergmann* v. *Jones*, 94 N. Y. 51; *Cramer* v. *Riggs*, 17 Wend. 209; *Croswell* v. *Weed*, 25 Wend. 621; *Fowles* v. *Bowen*, 30 N. Y. 20; *Purdy* v. *R. P. Co.*, 26 Hun, 206; 4 Wait's Act. & Def. 81; *Cruikshank* v. *Gordon*, 28 N. Y. S. R. 784; *Turton* v. *N. Y. Recorder*, 144 N. Y. 144; *Hunt* v. *Bennett*, 19 N. Y. 173; *Holmes* v. *Jones*, 121 N. Y. 461; *Morey* v. *M. J. Assn.*, 123 N. Y. 207; *Fidler* v. *Delevan*, 20 Wend. 57; *Foot* v. *Brown*, 8 Johns. 63; *Lynde* v. *Johnson*, 39 Hun, 16; Townshend on Slander [4th ed.], 12; Holt on Libel, 21; 1 Chitty Prac. 45; Starkie on Slander, 89; *Brooks* v. *Harrison*, 91 N. Y. 89.) The trial court properly submitted to the jury for its interpretation the charge contained in the eighth paragraph, and left it to them to say whether the words used were injurious or innocent. (*Sanderson* v. *Caldwell*, 45 N. Y. 401; *Brooks* v. *Harrison*, 91 N. Y. 83.) The trial court properly held as a matter of law that

the publication was not privileged. (*Hamilton* v. *Eno*, 81 N. Y. 117; *Byam* v. *Collins*, 111 N. Y. 143; *Wood* v. *Wiman*, 122 N. Y. 449; *Hunt* v. *Bennett*, 19 N. Y. 174; *Sunderlin* v. *Bradstreet*, 46 N. Y. 188; *Taylor* v. *Church*, 8 N. Y. 452; *Weber* v. *Vincent*, 29 N. Y. S. R. 603.) The trial court properly charged the jury that the paragraph relating to the plaintiff in his professional capacity as an attorney being libelous *per se*, and no justification having been pleaded, or attempted upon the trial, the jury should render some damage on account of it. (*Taylor* v. *Church*, 8 N. Y. 452; *Samuels* v. *E. M. Assn.*, 9 Hun, 294; 75 N. Y. 604; *Bergmann* v. *Jones*, 94 N. Y. 51; *Holmes* v. *Jones*, 121 N. Y. 461; *Warner* v. *P. P. Co.*, 132 N. Y. 181; *Marks* v. *P. P. Co.*, 47 N. Y. S. R. 775.) The paragraph charging plaintiff with incompetency as an attorney was entirely undefended. Not a single fact was pleaded which would tend to justify or mitigate the libelous publication, and no evidence was given upon the trial tending to excuse, justify or mitigate it. (Townshend on Libel [4th ed.], 604; *Fry* v. *Bennett*, 5 Sandf. 54; *Knox* v. *Comcl. Agency*, 40 Hun, 508; *Ball* v. *E. P. Co.*, 38 Hun, 11; Code Civ. Pro. § 536; *Wachter* v. *Quenzer*, 29 N. Y. 547; *Hatfield* v. *Lasher*, 81 N. Y. 246; *Hamilton* v. *Eno*, 81 N. Y. 116; *Turton* v. *N. Y. R. Co.*, 144 N. Y. 149; *Moore* v. *Francis*, 121 N. Y. 207; *Morey* v. *M. J. Assn.*, 144 N. Y. 148.)

PECKHAM, J. *First.* In our judgment the trial court made no mistake in charging the jury that the words of the second paragraph upon their face were actionable, and that the only question for them to determine upon that branch was one of damages. The learned judge said there was no ambiguity about the language; that the meaning which everybody reading it would draw from it was the incompetency and incapacity of the plaintiff as an attorney to perform the duties of the attorney to the village, and that it attacked the plaintiff in his professional capacity, and nothing remained for the jury but to assess the damages. The counsel for the defendant argues

that this was error, for the reason that the language is, at least, capable of two different meanings, one of which is not actionable, and the question should have been left to the jury to say in which sense the language was used by the defendant. He says that it was a question for the jury whether the defendant intended to or did charge a lack of professional skill or ability generally, or only a lack of it in the particular case or cases referred to.

The language used by the court in *Foot* v. *Brown* (8 Johns. 63) is cited, to the effect that the law only gives an action for words that affect a man's credit in his profession as charging him generally in his profession with ignorance or want of skill, or a want of integrity, either in general or in particular. To the same effect are cited the cases of *Lynde* v. *Johnson* (39 Hun, 16), and *Cruikshank* v. *Gordon* (118 N. Y. 178.) The last two cases were those relating to surgeons in respect to particular cases treated by them. The case in Hun was held proper to be submitted to the jury for its decision as to the meaning of the language used, whether it meant to charge ignorance in general, or merely with a want of that proper care and skill in ascertaining the remedy required in the particular case. The *Cruikshank* case was one where it was held that the language used did impute general ignorance of medical science, and so was actionable *per se*. Other cases to like effect were cited by counsel in his exhaustive brief in this case. The complaint herein alleges no special damage and none was proven. If the words used are capable of the construction contended for by counsel for the defendant, then, he says, that as no allegation was made and no proof given of any special damage, the question as to the sense to be given to the language was for the jury.

The cases above mentioned and the others cited by the counsel do not as we think cover this case.

The language used by the court must be looked at with reference to the facts of the case wherein it is employed. Thus, in the case of *Foot* v. *Brown* (*supra*) an action of ejectment had been brought by the plaintiff, an attorney, for his

client, and the words used by the defendant only charged
plaintiff with negligence or want of skill in the particular
ejectment suit mentioned, and such a charge was held to
necessitate an allegation and proof of special damage to render
it actionable. The court said there was not a case in the
books where an action had been held to lie for charging a
professional man with ignorance in a particular case. Con-
tinuing, the learned court said that " there was no physician,
however eminent, who is not liable to mistake the symptoms
of a particular disease nor any attorney who may not mis-
understand the complicated nature and legal consequences of
a particular litigation." Would it not, however, be actionable
*per se* to say of a physician to a " lying-in hospital," that he
was ignorant of the first principles of obstetrical practice ?
Or of a medical superintendent in an insane hospital, that he
was entirely incapable of properly treating a case of insanity ?
Or of a lawyer devoting himself to cases involving the law of
patents, that he was an ignoramus so far as the law of patents
was concerned ? True, the doctor or the lawyer might be
capable in other branches of the profession, and the words
suggested do not refer to his general incompetency as a
physician or lawyer in all of those branches, and yet it would
seem as if there could be no fair doubt that such words would be
actionable *per se*. They refer to general incapacity or igno-
rance in that particular branch or sphere of professional labor
chosen by such doctor or lawyer. The plaintiff in this case had
been frequently counsel for the village of Oneonta. In such
an employment it would almost necessarily (as in fact it did)
happen that, among others, cases of negligence would arise and
it would be the duty of the counsel employed by the village
to defend such suits. A general incapacity to properly per-
form the duties of defending that class of cases seems to be,
under such circumstances, equivalent to a general incapacity
to properly discharge the duties of his profession. Those
duties are, in these circumstances, to try such cases, and he
assumes a responsibility in taking such a general class of
employment to discharge such duties with ordinary care and

capacity. A charge which accuses him of incapacity to perform the ordinary duties appertaining to the practice of his profession in such cases is of so general a nature as to come within the reason if not the very letter of the rule as to general incapacity. It is not incapacity as to a single case or a single litigation. It is incapacity as to a general class of actions in regard to which he has assumed knowledge and capacity to a reasonable extent by taking such cases as a class and defending them as part of his professional duties.

The words actually used in the so-called second paragraph of this circular amount at the least to a charge of general incapacity to defend negligence cases, and it is that very class, among others, that the plaintiff had held himself out as capable of defending when accepting the employment of the village to act as its attorney or counsel in cases of this character and in defending such cases. The language used in this paragraph is of a character to make the inference a necessary one that actions against the village having no real merit on the part of the plaintiffs would end in large verdicts in their favor resulting either from incapacity on the part of the counsel for the village or else from a lack of integrity in making the defense. The trial court did not submit to the jury to find the latter possible construction, but simply said that the language necessarily implied lack of capacity. The defendant has no right of complaint if the more serious construction were not submitted to the jury and it was confined to the less serious one. In *Moore* v. *Francis* (121 N. Y. 199) it is said that words that affect a man in his trade or occupation and which tend to prejudice him therein are actionable. To confine an accusation of incapacity to a particular case, the courts hold, does not tend to prejudice a man in his profession without proof of special damage, but it surely must tend to so prejudice him in a case where the accusation is a want of capacity to defend a class of cases which the attorney is in the habit of attempting to defend, of holding himself out as capable of defending, and where he has accepted employment from a client, many of whose cases are of that description.

It is also alleged that the plaintiff, in his complaint, set forth the meaning of the language in the second paragraph by means of an innuendo, which alleged that the defendant meant to charge the plaintiff with incapacity, corruption, dishonesty and malpractice in his profession. The defendant claims that the plaintiff must be held to proof of the correctness of that charge, and whether it was or was not proved was a question for the jury, and that the jury should not have been permitted to find for the plaintiff upon a naked finding of incapacity, without the further finding that the language was intended to and did include a charge of dishonesty. If the words actually used were in all possible senses actionable *per se*, although capable of different constructions, some of which were graver in their nature than others, an innuendo might be made use of which charged the graver meaning, and then whether the language was so used or understood would be a question for the jury. It would not, however, be error of which the defendant could complain, if, under such circumstances where an innuendo had been so used, the court should declare in its charge to the jury that the language meant incapacity, and did not include dishonesty or malpractice or corruption. That the jury was confined to the milder meaning of the language used is surely no ground of error for the defendant. In such case the innuendo may be disregarded, the same as in cases where the language is plain and unambiguous. (*Turton* v. *Recorder Co.*, 144 N. Y. 144.) We hold that, in any possible construction which could properly be given to the words used, they were actionable *per se*. The court did not err in its charge to the jury upon the point under consideration.

*Second.* The defendant also claims that the court erred in charging that the second paragraph was undefended and unmitigated and in permitting the jury to find exemplary damages.

As to being undefended we think the proof is clear that no justification was made out, and there was no denial of the publication. There was no error in so charging.

Nor do we think the court erred as to mitigation. The defendant's claim is that the jury should have been allowed to consider, in mitigation of the charge, that plaintiff was incompetent (as already spoken of), the various facts set up in the answer, and in regard to which evidence had been given, such as the impending election of trustees for the village; that plaintiff had been an official of the village (assessor), and during his incumbency great extravagance had prevailed; judgments had been obtained against the village while plaintiff was its attorney; that the charge was but part of a circular distributed to the taxpayers arraigning the plaintiff and other officials and criticising the general conduct of affairs and published for the purpose of arousing public attention to these matters, and that defendant was himself a taxpayer and resident of the village and interested in the affairs thereof.

Mitigating circumstances are those which, while not proving the truth of the charge, do yet tend in some appreciable degree towards such proof and thus permit of an inference that defendant was not actuated by malice in his charge. They must be of such a nature as to show that defendant, though mistaken, believed the charge to be true when it was made. The mitigating facts must be connected with or bear upon the defamatory charge. (*Bush* v. *Prosser*, 11 N. Y. 347; *Bisbey* v. *Shaw*, 12 N. Y. 67; *Hamilton* v. *Eno*, 81 N. Y. 116.) Mitigating circumstances under the old system, when a justification was set up, could not be proved because they did not amount to a justification. The reasons are stated in the cases in 11 and 12 N. Y. (*supra*). There have been circumstances admitted as mitigating where from prior acts or publications of the plaintiff the feelings of defendant have been exasperated. They do not apply here. The circumstances must otherwise be such as tend to disprove malice by showing that the words were spoken in the honest belief that they were true, with some reason for such belief and without actual malice or evil design. (*Bisbey* v. *Shaw*, *supra*.) With this definition as to what are mitigating circumstances, we do not perceive how they can be claimed to have been proved in this

case. Nothing that was proved can be fairly or reasonably said to tend to disprove malice by showing the words were spoken in the honest belief of their truth, or that there was the least reason for such belief. In other words, the facts proved had no natural tendency to induce belief that the plain-tiff was incompetent or that defendant had reasonable founda-tion for that belief arising from those facts when he wrote the circular, or even that he had such belief at all.

The fact that defendant did not devote his whole circular to charges against the plaintiff, and that the balance of it was upon general village subjects which he was justified in refer-ring to, does not render the whole publication proper, nor is the whole publication thereby made a fact to be taken into consideration as a mitigating one in estimating the character of the charges against the plaintiff. The judge added to his charge on this subject, that as a result of the words being undefended and unmitigated, the jury must give some damage on account of it, and the amount thereof, he told them, rested in their good sense and discretion. We think he was right in his charge. He confined the jury upon a question of exem-plary damages to the consideration of facts showing the exist-ence of special malice as distinguished from a mere presump-tion of malice arising from the publication, and he said to the jury that the amount of these exemplary damages would be larger or smaller or not rendered at all according as the jury should find the existence and extent or absence of this malice.

Taking the whole charge, we think the jury were properly directed. They were to give some damage because the second article was undefended and unmitigated; the amount was reasonably in their discretion as men of good sense and fair-ness, and so it was left. As to the exemplary damages, the subject was also submitted to them reasonably and with good judgment, and we can see no error in the matter of that submission.

*Third.* The defendant claims that the whole communica-tion was privileged, as also was each separate paragraph relat-

ing to the plaintiff. Proper requests were made for instruc-
tions to the jury to that effect, and exceptions duly taken to
the refusal of the court so to charge. The question as to
when a defamatory article is privileged is in the first instance
one of law. (*Klinck* v. *Colby*, 46 N. Y. 427; *Hamilton* v.
*Eno*, 81 N. Y. 116; *Byam* v. *Collins*, 111 N. Y. 143.) If
the court hold a communication privileged, then the question
of good faith in its publication, of actual malice as distinguished
from that which is presumed from a defamatory publication,
and also belief in the truth of the statement, are all matters
for the consideration of the jury. The court is to first judge
as to the claim of a privileged publication, and the question is
whether the circumstances of the publication were such as to
repel the legal inference of malice and to throw upon the
plaintiff the burden of offering some evidence of its existence
beyond the mere falsity of the charge. (*Lewis* v. *Chapman*,
16 N. Y. 369, 373, per SELDEN, J.) Where one has an inter-
est in the matter published, or a duty, even though not of a
legal nature, but one only of a moral or social character and
of imperfect obligation, and there is a propriety in the publi-
cation, and the party makes a statement in good faith to
another who has some similar duty or interest, or to whom a
like propriety attaches to hear or read the utterance, such
a publication is privileged, and the questions of actual malice,
good faith, etc., must then be submitted to the jury. (Cases
above cited.) Privileged communications are the exception
to the general rule as to malice, and the burden rests with the
plaintiff to show that the communication in question is within
the exception. (*Byam* v. *Collins, supra.*) The defendant
had the right at all times to communicate publicly by speech, or
in writing, with the citizens of Oneonta regarding the general
condition of municipal affairs. The approaching election for
trustees was a peculiarly appropriate occasion for it. But
the occasion did not excuse the defendant in making a personal
and defamatory charge against the character of the plaintiff,
nor was such a charge privileged within the meaning of the
term as already defined. (*Hamilton* v. *Eno*, 81 N. Y. *supra.*)

The defendant could not thus attack in an aspersive manner the private or professional character of the plaintiff; certainly not unless there were some fair or plausible reason for thus including and attacking it in the course of proper and appropriate criticisms concerning the manner in which the affairs of the village had been conducted. We do not think the proof or the circumstances show there was any such reason; nor can it fairly or appropriately be founded upon any or all of the facts proved by the defendant. If an individual choose to attack an officer and charge him with incompetency in his professional character and with criminality in his office as assessor (if the jury should so construe his language), he must be prepared, when brought into court, to prove the truth of his charge.

The court committed no error in its ruling on this subject.

*Fourth.* We are also of the opinion that the court rightfully submitted the construction of the eighth paragraph to the jury. The trial court left to the jury the question whether the language did not mean that plaintiff as assessor combined with other officers to make an improper and illegal valuation in order to carry out an improper and illegal waste of the taxes of the people, and the jury were instructed that if such were the meaning of the language it was actionable.

The counsel for the defendant criticises this charge because he says the language is incapable of any such meaning, and also because the plaintiff in his complaint, by way of innuendo, alleged that defendant meant by this language to charge plaintiff with corruptly and dishonestly entering into an unlawful and collusive agreement with the board of trustees of the village to unlawfully and corruptly increase the assessed valuation of the village for the purpose of extorting money from the taxpayers of the village. The defendant's counsel claims that the plaintiff is bound by the allegations in his complaint as to the meaning of the words and he cannot be permitted to reject such meaning on the trial and resort to another one, and he cites Folkard's Starkie on Libel, Wood's notes, page 482, sec. 446; Newell on Defamation, etc., page 629, sec. 39.

It is then claimed that the construction submitted to the jury is wholly different from that set out in the complaint, and that if by any possibility the language could be construed to mean as the court permitted the jury to find, it certainly could not be construed to mean any such thing as alleged in the complaint, and, therefore, the submission of the construction offered by the court was error. In the first place, we might say this question was not raised by any exception to the charge or by any request to charge. The exception raises the question generally as to the propriety of submitting the construction to the jury at all, and the defendant requested a charge that the language used was not actionable. The attention of the court was never drawn to the specific objection now made, that the judge was submitting a construction to the jury differing in its meaning from that alleged in the complaint. The possible construction actually submitted to the jury for it to find or not, while differing somewhat in language from that used in the complaint, is yet in substantial accord with it, sufficiently so, at any rate, to render it most important to have the defendant call the attention of the court to the alleged difference, and thereupon make a request to charge the jury in accordance with the defendant's contention, when the court might thereupon alter or enlarge or limit the meaning of the language already used by him. We think also the article is capable of the construction submitted to the jury to find. It is not strained or unnatural, and the fact that another and an innocent meaning might also be attached to the language is not a conclusive answer. That innocent meaning was presented to the jury to find, and it was instructed that if it found such to be the real meaning of the article, it was not actionable and the plaintiff was not entitled to any damage by reason of its publication. In all this there was no error.

Many other questions were argued and we have examined them, but we do not think there has been any error shown, and the judgment should, therefore, be affirmed, with costs.

All concur, except O'BRIEN, J., not voting.

Judgment affirmed.