JOHN P. CRANE, Appellant, *v.* NEW YORK WORLD TELEGRAM CORP. et al., Respondents.

Argued March 4, 1955; decided April 28, 1955.

*Morris G. Zirin* and *Eugene F. Bannigan* for appellant. I. The meaning of the defamation is clear and unambiguous and constitutes libel per se. (*Cafferty* v. *Southern Tier Pub. Co.,* 226 N. Y. 87; *Larsen* v. *Brooklyn Daily Eagle,* 165 App. Div. 4, 214 N. Y. 713; *Neaton* v. *Lewis Apparel Stores,* 267 App. Div. 728; *Matarazzo* v. *Daily Gazette Co.,* 276 App. Div. 249; *Mencher* v. *Chesley,* 297 N. Y. 94; *Burnham* v. *Hornaday,* 130 Misc. 207, 223 App. Div. 218; *Schoepflin* v. *Coffey,* 25 App. Div. 438, 162 N. Y. 12; *Szalay* v. *New York Amer.,* 254 App. Div. 249.) II. The purported justification alleged in both defenses failed to embrace the broad aspect of the libel, and failed to establish the truth thereof. Both complete and partial defenses are insufficient in law. (*La Stampa Libera Assn.* v. *New York Evening Journal,* 170 Misc. 1067; *Rathkopf* v. *Walker,* 190 Misc. 168, 274 App. Div. 1064; *Rouadi* v. *New York Evening Journal,* 255 App. Div. 794; *Fleckenstein* v. *Friedman,* 266 N. Y. 19; *Levey* v. *New York Evening Journal,* 237 App. Div. 255.) III. The allegations in the partial defense in mitigation or reduction of damages were likewise defective and legally insufficient. (*Hamilton* v. *Eno,* 81 N. Y. 116; *Mattice* v. *Wilcox,* 147 N. Y. 624; *New York Soc. for Suppression of Vice* v. *Macfadden Publications,* 133 Misc. 686; *Klein* v. *Biben,* 188 Misc. 681; *Kehoe* v. *New York Tribune,* 229 App. Div. 220; *McClelland* v. *Climax Hosiery Mills,* 252 N. Y. 347; *Burnham* v. *Hornaday,* 130 Misc. 207, 223 App. Div. 218; *Sherman* v. *International Publications,* 214 App. Div. 437.) IV. The allegations of both defenses were irrelevant, conclusory and prejudicial and would be incompetent and inadmissible on trial. Their striking was required by rule 103 of the Rules of

Civil Practice. (*Stone* v. *Friedman,* 271 App. Div. 790; *Frost* v. *Friedman,* 271 App. Div. 787; *Theodore* v. *Daily Mirror,* 282 N. Y. 345; *Cudlip* v. *New York Evening Journal Pub. Co.,* 180 N. Y. 85; *Richards* v. *Bieber,* 166 Misc. 91, 254 App. Div. 832; *Wuensch* v. *Morning Journal Assn.,* 4 App. Div. 110; *Dinwiddie* v. *Rochester News Corp.,* 132 Misc. 876; *Sherman* v. *International Publications,* 214 App. Div. 437.)

*Thomas A. Diskin, Macdonald De Witt, C. Coudert Nast* and *William E. Flannery* for respondents. I. The complete defense of justification is as broad as the charge of which plaintiff complains. (*Washington Post Co.* v. *Chaloner,* 250 U. S. 290; *Demos* v. *New York Evening Journal Pub. Co.,* 210 N. Y. 13; *Baumann* v. *Newspaper Enterprises,* 270 App. Div. 825; *Van Arsdale* v. *Time,* 265 App. Div. 919; *Shields* v. *Chilton Co.,* 255 App. Div. 985; *Finkle* v. *Westchester Newspapers,* 235 App. Div. 817; *Rovira* v. *Boget,* 240 N. Y. 314; *Briarcliff Lodge Hotel* v. *Citizens-Sentinel Publishers,* 260 N. Y. 106; *Fleckenstein* v. *Friedman,* 266 N. Y. 19.) II. The partial defense pleaded is sufficient as a matter of law. (*Morse* v. *Press Pub. Co.,* 63 App. Div. 61; *Klaw* v. *New York Press Co.,* 144 App. Div. 501; *Bergstrom* v. *Commercial Advertiser Assn.,* 147 App. Div. 774; *Levey* v. *New York Evening Journal,* 237 App. Div. 255; *Goodrow* v. *New York Amer.,* 233 App. Div. 37.)

FULD, J. On December 6, 1951, there appeared in a column of the *New York World-Telegram and The Sun,* a newspaper of wide daily circulation, this item:

> " ' John Crane, former president of the UFA now under indictment, isn't waiting for his own legal developments. Meanwhile his lawyers are launching a $,$$$,$$$ defamation suit.' "

The present action for libel followed; the individual defendant is the columnist who wrote the piece, the corporate defendant, the owner and publisher of the paper. The answer which defendants interposed includes two separate defenses, one complete, the other partial, both based on the premise and hypothesis that the charge is true in that plaintiff, though never " indicted " by a grand jury, had been accused of a number of indictable crimes by various people. By the motion under

consideration, an order is sought striking both defenses as insufficient in law.

Plaintiff alleges that the publication was false and defamatory, that defendants knew or could have ascertained its falsity by the exercise of reasonable care and that they were guilty of " actual malice and wrongfully and wilfully intended to injure the plaintiff." Claiming, among other things, great injury to credit and reputation and an inability to secure or retain employment, he asks damages of $100,000.

Defendants deny all these allegations, except that of publication, and allege two separate defenses. The first of these purports to establish the truth of the publication. While nowhere stating that plaintiff was indicted by a grand jury — and, concededly, he never was — it asserts, nevertheless, that he was " under indictment " in an alleged nonlegal sense of that term; more specifically, it recites that he had been accused of various crimes by private individuals and was, in fact, guilty of those crimes. In support of the publication's truth under such a construction, it sets forth in considerable detail the substance of the New York City Fire Department scandals and investigations of 1950–1951, in which plaintiff, then president of an association of firemen, and others are depicted as playing a prominent part.

Little purpose would be served by repeating these allegations at any length. It is enough to observe that — while many of them touch on the derelictions of other firemen and relate to matters in which it is not clear that plaintiff was involved — it is recited that plaintiff misappropriated proceeds from the sale of tickets to the anual Firemen's Balls; that he had been accused of criminal activity by fellow firemen and others; and that, in testifying before a New York County grand jury and a committee of the United States Senate, he had admitted, without waiving immunity, facts which established his guilt of larceny and bribery.

The second separate defense, designated " Partial ", repeats and makes a part of itself each and every allegation of the first defense. It states that the facts set forth were widely published and commented on by the press of New York City and that " the general reputation of the plaintiff in [that city] and its vicinity was bad " at the time of the publication and for some time

before. And, in conclusion, the answer avers that "All of the facts hereinabove * * * pleaded" were known to and relied upon by defendants at the time of publication, and induced them to believe in the truth of the alleged libel.

The court at Special Term granted plaintiff's motion, directing that both defenses be stricken as insufficient in law (Rules Civ. Prac., rule 109), on the ground that they had no relation to the truth of the publication. In the absence of qualifying language, the court said, the term "indictment" could be understood by reasonable people "in only one sense, namely, as a charge by a grand jury of the commission of a crime." The Appellate Division took a different view; it reversed, holding that "indictment" is reasonably susceptible to both the meaning "of an accusation by a grand jury, and of an accusation generally", and that it was for a jury to say in what sense it would be understood by the reader. The appeal is here by permission of the Appellate Division on certified questions.

In our judgment, the publication complained of, when considered in context as it must be, could reasonably be read and interpreted in only one way, that is, as charging that plaintiff had been indicted by the grand jury for some crime. " It has long been the rule that words charged to be defamatory are to be taken in their natural meaning" (*Mencher* v. *Chesley*, 297 N. Y. 94, 99); they are to be " construed as persons generally understand them and according to their ordinary meaning." (*Cafferty* v. *Southern Tier Pub. Co.*, 226 N. Y. 87, 93.) There can be no question that the " ordinary meaning " of the term " indictment " is that of the legal process, usually before a grand jury, whereby a person is formally charged with crime and a criminal prosecution begun. The courts have so recognized (see *Jones, Varnum & Co.* v. *Townsend's Administratrix*, 21 Fla. 431, 440; *Bailey* v. *Kalamazoo Pub. Co.*, 40 Mich. 251, 255–256; cf. *Pelton* v. *Ward*, 3 Caines 73, 77), and the dictionaries are all to the same effect, offering, with only minor variations in phraseology, definitions such as the one in Webster's Collegiate Dictionary:

> "1. Act or process, esp. the legal process, of indicting; state of being indicted."

If, as defendants claim, the word permits of a looser, a highly rhetorical, use to signify an accusation by private persons, that sense of the term is so rare, as contrasted with the legal process of indictment, that no reader would so understand or accept it without some qualifying language to indicate that the ordinary meaning was not intended. An example would be a statement that John Doe stands " indicted in the court of public opinion." Absent that sort of indication, or something similar, a newspaper's bald assertion that a person is " under indictment " could only be taken as referring to the legal process, whereby prosecution for crime is begun.

Indeed, had there been any doubt in the reader's mind on that score, it would surely have been dispelled by the remainder of the statement. The item went on to say that plaintiff, " now under indictment, *isn't waiting for his own legal developments.* Meanwhile his lawyers are launching a $,$$$,$$$ defamation suit." (Emphasis supplied.) The phrase " his own legal developments ", coming immediately after the reference to his " indictment," could only be taken as alluding to further developments consequent upon, and under, the indictment; it gives to the statement the unmistakable flavor of legal process.

There is no doubt, then, that the publication charges plaintiff with having been indicted by a grand jury. That being so, it necessarily follows that the first defense is insufficient. That defense is predicated entirely on the assumption that a jury could accept the broader meaning urged by defendants, for it is not even argued that the allegations therein made, of criminal activity and accusation by private persons, establish the truth of the charge that plaintiff had been indicted by a grand jury. A plea of truth as justification must be as broad as the alleged libel and must establish the truth of the precise charge therein made. (See, e.g., *White* v. *Barry,* 288 N. Y. 37, 39; *Fleckenstein* v. *Friedman,* 266 N. Y. 19, 23; see, also, Seelman on The Law of Libel and Slander [1933], § 171, p. 146.) It is one thing to say that a person has been accused by his colleagues and, without waiving immunity, has testified before a grand jury to criminal activities, and quite another thing to say that an indictment has been brought against him by a grand jury. (See *Jones, Varnum & Co.* v. *Townsend's Administratrix, supra,* 21 Fla. 431, 440.) The former charge may be a serious blot upon reputation, but

the latter says, in a practical and amoral sense, much more, for it announces that an actual criminal prosecution has been brought against him, that he must stand trial and may be found guilty and sentenced to a prison term.

Defendants contend, however, that, even though the complete defense be held insufficient, its allegations may properly be repeated in their entirety in the second numbered defense, as a partial defense in mitigation of damages, when coupled with the further allegations that " the facts " were widely known, that plaintiff's general reputation was bad, and that all such matters were known to defendants, relied upon by them and made them believe in the truth of the item in question. Before proceeding to a consideration of that defense, we examine some of the relevant principles governing damages in libel actions, as well as their mitigation or reduction by the proof of acts which fall short of those charged in the libel.

The damages recoverable for a defamation consist of two items: (1) compensatory (or actual) damages, of which a major component is the damage to plaintiff's reputation resulting from the libel and (2) punitive (or exemplary) damages, recoverable only if the publication is shown to have been made with " actual malice " — a term taken to include " a libel, recklessly or carelessly published, as well as one induced by personal ill-will ". (*Smith* v. *Matthews,* 152 N. Y. 152, 158; see, also, *Crane* v. *Bennett,* 177 N. Y. 106, 115–116; *Warner* v. *Press Pub. Co.,* 132 N. Y. 181, 185.) Well settled is the basic rule that the amount of plaintiff's recovery may be reduced by proof of facts " tending but failing to prove the truth " of the libel's charge. (*Fleckenstein* v. *Friedman, supra,* 266 N. Y. 19, 24; see, also, *Gressman* v. *Morning Journal Assn.,* 197 N. Y. 474; *Lanpher* v. *Clark,* 149 N. Y. 472; *Mattice* v. *Wilcox,* 147 N. Y. 624, 634–635.) That proof is relevant in mitigation of punitive damages, for it may negative actual malice by showing that defendant, though mistaken, had reasonable grounds for belief in the truth of the charge contained in the publication. (See *Mattice* v. *Wilcox, supra,* 147 N. Y. 624, 634; *Bergström* v. *Ridgway Co.,* 138 App. Div. 178, 181–182; cf. *Abell* v. *Cornwall Ind. Corp.,* 241 N. Y. 327, 338.) And, turning to compensatory damages, such evidence may serve to reduce them as well (see *Fleckenstein* v. *Friedman, supra,* 266 N. Y. 19, 24; *Gressman* v. *Morning Journal Assn.,*

*supra,* 197 N. Y. 474, 480), on the theory that, if the actual facts " gave some color of verity to the statements contained in the published article, plaintiff would not be entitled to receive the same damages as if his reputation was beyond unfavorable criticism or comment." (*Goodrow* v. *Malone Telegram,* 235 App. Div. 3, 5.) But, of necessity, the facts that go to make up a partial defense in mitigation and reduction must *tend to prove the truth of the precise charge* made by the publication. (See, e.g., *Gressman* v. *Morning Journal Assn., supra,* 197 N. Y. 474; *Lanpher* v. *Clark, supra,* 149 N. Y. 472.)

In the case before us, however, the facts alleged are entirely unrelated to the truth of the charge that plaintiff had been indicted; they tend at most to prove that plaintiff had engaged in criminal activity and had been accused of wrong-doing by his fellow firemen. In this respect, the case is not too unlike *Levey* v. *New York Evening Journal* (237 App. Div. 255). There, the libel charged that plaintiff had committed a crime and had been *arrested by the district attorney's office.* The defense was to the effect that he was being *investigated by the Attorney-General,* and that, instead of having been arrested, he had appeared voluntarily for examination. These facts, and defendant's belief in them, the court held insufficient as a partial defense in mitigation or reduction of damages, for they did " not tend in some appreciable degree towards proving the truth of the charge in the libel." In the words of the court, " What defense is it for the defendant to have relied upon information that plaintiff was being investigated merely by the Attorney-General to say that he had in fact been investigated and arrested by the district attorney? " (237 App. Div., at pp. 257–258.)

The situation might be different had defendants acknowledged that they had charged plaintiff with having been indicted and then proceeded to claim that they believed that to be true because plaintiff had been before the grand jury and had testified to his commission of crime. In such a case, those facts would tend, perhaps, toward proof of a belief in the charge actually made, but that is not this case. Here, by their very pleading, defendants seek to give a different and broader meaning to the published charge than reason permits. They do not even claim that they believed that plaintiff had been indicted; on the contrary, they declare that they actually knew that he

had not been, expressly stating that plaintiff's failure to waive immunity " precluded his prosecution " for the alleged crimes, which fact, they admit, was " known to　*　*　*　[them] prior to the making of the publication ".

Defendants advance the additional contention that the pleading should be upheld and sustained, even if it does not tend to prove truth, because *some* of the facts alleged — as to particular acts of misconduct and bad reputation — may, nevertheless, be relevant to negative actual malice or reduce the value of plaintiff's injured reputation. Those allegations, the argument runs, may be used for that purpose irrespective of the form in which they are pleaded (see *Fleckenstein* v. *Friedman, supra,* 266 N. Y. 19, 25; *Zirn* v. *Bradley,* 270 App. Div. 829), and reliance is placed upon the principle that a defense should not be stricken for insufficiency if any part is sufficient. (See, e.g., *Meyers* v. *Huschle Bros.,* 274 App. Div. 80, 83; *Klaw* v. *New York Press Co.,* 144 App. Div. 501.)

Considerable doubt exists whether any of the matter pleaded is proper, for the rule is clear that, while defendant may offer proof of plaintiff's bad general reputation prior to the publication, to reduce the value of the injured interest, he may not plead or prove for that purpose " specific acts, or instances, of plaintiff's misconduct " having no connection with the charge of the libel. (*Cudlip* v. *New York Evening Journal Pub. Co.,* 180 N. Y. 85, 87; see, also, *Theodore* v. *Daily Mirror,* 282 N. Y. 345, 347; *Abell* v. *Cornwall Ind. Corp., supra,* 241 N. Y. 327, 338; *Holmes* v. *Jones,* 147 N. Y. 59, 68; *Corning* v. *Corning,* 6 N. Y. 97, 104.) Such specific misconduct, we have seen, may be admitted only if it also tends, but fails, to prove the truth of the libel's charge. (Cf. *Lanpher* v. *Clark, supra,* 149 N. Y. 472; *Carpenter* v. *New York Evening Journal Pub. Co.,* 96 App. Div. 376, 381; *Goodrow* v. *New York American,* 233 App. Div. 37.)

However, regardless of what facts defendants might properly plead and prove, we may not approve the kind of pleading embodied in the second separate defense.

The entire thrust and purport of that defense is to establish defendants' belief in the truth of a different charge than the one made by the writing. Of the specific instances of misconduct alleged, which amount almost to a complete history of the Fire Department scandals, a considerable proportion would be

inadmissible in evidence, as conclusory, irrelevant or prejudicial. The same is true of the list of newspaper headlines appended to the answer. Some of the items refer to the derelictions of fellow firemen with no suggestion that plaintiff was involved, while others purport to establish his guilt of divers acts on the basis of mere conjecture and rumor. (Cf. *Abell* v. *Cornwall Ind. Corp., supra,* 241 N. Y. 327.) These allegations are certainly improper, and it is unthinkable that a defense, otherwise insufficient, should be saved and upheld by the device of simply adding a recital that plaintiff " enjoyed " a bad general reputation.[1]

Of the defense as a whole, therefore, it must be said, as another court said in dealing with the analogous problem posed in a complaint, that, even if some of its allegations are proper, they are " so inextricably interwoven with that which is insufficient that the complaint in its entirety must be dismissed ". (*Le Page* v. *Automobile Club of N. Y.,* 258 App. Div. 981, 982; cf. *Sherman* v. *International Publications,* 214 App. Div. 437, 440–442; *Burnham* v. *Hornaday,* 223 App. Div. 218, 219.)

We are not here deciding what facts defendants may adduce and prove in reduction of compensatory damages under the general denial, and nothing that we now say is to be taken as precluding defendants from seeking to amend their answer so as to plead properly matters in reduction of compensatory damages or in mitigation of those that are punitive in character. Nor are we suggesting that a partial defense must be pleaded in any particular form or that its purpose must be labeled. (See *Fleckenstein* v. *Friedman, supra,* 266 N. Y. 19, 25.) All that we are holding is that the defense, aimed at establishing the truth of a charge different from that made in the publication, cannot stand. And it may not be saved by virtue of the fact that some of the items alleged might be pleaded properly in a different defense or that some of them might be proved at the trial.

In conclusion, the charge that plaintiff is " now under indictment," read in context, cannot reasonably convey any meaning other than that he had been indicted by a grand jury. A court, it is fundamental, should never take from a jury doubtful questions of fact, but it is equally basic that a court shirks its duty

---

1. Proof of bad reputation is, of course, admissible under the general denial. (See, e.g., *Fleckenstein* v. *Friedman, supra,* 266 N. Y. 19, 25.)

if it creates an issue, when none exists, solely to foist decision upon a jury. We would be doing just that were we here to deny plaintiff's motion to strike the separate defenses as insufficient in law.

The order of the Appellate Division should be reversed, with costs in this court and in the Appellate Division, and the matter remitted to Special Term for further proceedings in accordance with this opinion. The first question certified is answered in the affirmative; the second question certified answered in the negative.

CONWAY, Ch. J., DESMOND, DYE, FROESSEL, VAN VOORHIS and BURKE, JJ., concur.

Order reversed, etc.