■ HARTWOOD W. McCART, Appellant, v SHEILA F. MORRIS, Respondent. (Action No. 1.) NICHOLAS J. LUKACOVIC, Appellant, v SHEILA F. MORRIS, Respondent. (Action No. 2.) PETER D. COOPER, Appellant, v SHEILA F. MORRIS, Respondent. (Action No. 3.)—Appeals from judgments of the Supreme Court in favor of defendant, entered March 19, 1976 in Rensselaer County, upon a dismissal of the complaints by the court at a Trial Term at the close of the evidence. The plaintiffs in these three actions, all members of the New York State Police, and the defendant, a school teacher, were at the time of the joint trial neighbors in the Town of Pittstown in Rensselaer County. The three complaints herein allege various causes of action for libel, slander and intentional infliction of emotional distress. The words and writings alleged to have been defamatory accused the plaintiffs of such items of alleged misconduct as illegal snowmobiling, speeding, cutting down a tree on defendant's land and using undue influence to obtain the dedication of a certain road which benefited some of their properties. No special damages are set forth in the complaints. As found by the trial court, there was no proof of special damages at the trial and, in fact, "special damages, are concededly lacking". Absent allegations or proof of special damages, the question is whether the statements complained of are libel or slander per se. "The test whether an article is libelous or spoken words are slanderous per se is whether the tenor of the article or words and the language used would to the mind of an intelligent man naturally import a criminal or disgraceful charge" (34 NY Jur, Libel and Slander, § 3, pp 471-472). "'A writing if defamatory—that is, actionable without allegation or proof of special damage—if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community, even though it may impute no moral turpitude to him'" (Brown v Du Frey, 1 NY2d 190, 196; Mencher v Chesley, 297 NY 94, 100; Nichols v Item Publishers, 309 NY 596, 600-601). When, as in the instant cases, the language of the publications is unambiguous, the question of whether they are slanderous or libelous per se is for the court (Tracy v Newsday, Inc., 5 NY2d 134; Crane v New York World Tel. Corp., 308 NY 470; 34 NY Jur, Libel and Slander, § 3, p 472). In determining whether a statement is libelous per se, it "'must be read as a whole and the words and phrases must be construed together in context' * * * Words alleged to be libelous are to be taken in their natural meaning * * * and construed as persons generally understand them according to their ordinary meaning" (Robert v Troy Record Co., 31 AD2d 574). The court should "decide in

accordance with the general and fixed opinion of the particular locality as to the damaging effect of the charge contained in the words. In certain instances, where the utterance of the defendant is not clearly actionable per se, the surrounding circumstances and conditions must be taken into account to determine the matter" (34 NY Jur, Libel and Slander, § 3, p 472). It is clear from an examination of the record that the trial court was fully cognizant of and correctly applied these principles in dismissing these actions. While the various statements set forth by the plaintiffs as evidence of libel and slander were certainly not favorable to plaintiffs, taking into account their natural meaning, and under all of the circumstances of this case, none of them are such as would "expose a person to hatred, contempt or aversion, or * * * induce an evil or unsavory opinion of [plaintiffs] in the minds of a substantial number of the community" (Mencher v Chesley, supra, p 100). We note in passing that the overwhelming majority of the written and oral statements complained of herein accuse plaintiffs of misconduct wholly apart from their official duties. In view of our decision on the common law of this jurisdiction, we have not found it necessary to consider whether those statements would be privileged under New York Times Co. v Sullivan (376 US 254). Likewise, we have no reason to consider whether those statements relating to the official duties of plaintiffs would be also privileged, as not made with " 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not" under New York Times Co. v Sullivan (pp 279-280). In response to plaintiffs' argument that the trial court erred in dismissing the complaints because of a previous Special Term decision refusing to dismiss the majority of the causes of action, suffice to say that this court is not bound to follow the decision of either Special Term or Trial Term (Rothouse v Association of Lake Mohegan Park Prop. Owners, 15 AD2d 739; Field v Public Administrator of County of N. Y., 10 AD2d 97). Judgments affirmed, without costs. Koreman, P. J., Sweeney, Mahoney and Larkin, JJ., concur; Kane, J., dissents and votes to reverse in the following memorandum: Kane, J. (dissenting). Inasmuch as the trial court dismissed these actions at the close of the evidence, we are obliged to view the facts and the inferences to be drawn therefrom in the light most favorable to the plaintiffs; yet the majority quotes well-settled general principles of law and concludes that the matters complained of were not actionable without saying how it analyzed those facts to arrive at such a result. In my opinion the instant writings required no proof of special damages, provided they were defamatory (Hinsdale v Orange County Pub., 17 NY2d 284), and the spoken words, if slanderous per se, would likewise support an award of general damages. While it is undoubtedly a judicial chore to determine whether particular communications are reasonably susceptible of a defamatory meaning, it is properly for a jury to decide whether that was the sense in which such statements would be understood (James v Gannett Co., 40 NY2d 415, 419; Mencher v Chesley, 297 NY 94, 100). The writings involved here chiefly accused the plaintiffs of wrongfully securing the benefits of a private road at public expense. I believe that a substantial number of the community would regard this as morally repugnant conduct; it smacks of illegal dealings among public officials and, at the very least, would cause others to form a low opinion of those who would so misuse the public purse. The spoken words, though less serious in degree, similarly alleged misconduct on the part of these plaintiffs which can only be described as imputations of criminal activity or aspersions on the worthiness of plaintiffs to continue in their posts as members of the State Police. As such, they were slanderous

per se, or so a jury could reasonably find, and, therefore, the present judgments should not be affirmed for a want of actionable language. Furthermore, plaintiffs abundantly demonstrated the ill-will defendant harbored against them personally and thereby satisfied their burden of showing an abuse of the qualified privileges she may have possessed to complain about their actions to proper authorities or to comment on items of public interest to the community. The evidence fairly seems to 'indicate that defendant was motivated by feelings of revenge or spite. Although a jury might not agree, it should be for that body to resolve the issue for I cannot say that the attack plaintiffs mounted on those privileges failed as a matter of law. Moreover, plaintiffs developed facts from which it could be inferred that defendant uttered the challenged statements either knowing they were false or with a high degree of awareness of probable falsity. Defendant was unsure of the accuracy of her charges but made them anyway. Thus, assuming that the privilege accorded her under *New York Times Co. v Sullivan* (376 US 254) applies, it offers no absolute protection for her communications and this matter too should be submitted to a jury (see *St. Amant v Thompson,* 390 US 727). Lastly, although not mentioned by the majority, I agree with the trial court that the causes of action asserted for the intentional infliction of emotional harm were not established by the plaintiffs. Their complaints should be reinstated and a new trial directed solely on the defamation causes of action.