HARRY P. JONES, Respondent, *v.* NELLIE C. JONES, Appellant.*

Third Department, January 20, 1937.

*Harry W. Williams*, for the appellant.

*Ransom H. Gillett*, for the respondent.

McNAMEE, J. The facts of the case are stipulated. The defendant married Clyde P. Montgomery in Virginia on September 28, 1911, and no decree has been granted dissolving or annulling that marriage. In January, 1922, Montgomery was convicted of felony in the State of North Carolina, and finally sentenced to death. On appeal that judgment and sentence were affirmed, and June 14, 1923, was the day ultimately set for execution. On June 11, 1923, the Governor of North Carolina commuted the sentence to life imprisonment; and the proof indicates that Montgomery is still living, and now at liberty.

The plaintiff knew of the defendant's first marriage, and both of the parties hereto were aware of the conviction of Montgomery, and of the final sentence imposed, as above mentioned. With knowledge of these facts, on May 26, 1923, the parties to this action intermarried in the State of New York, and thereafter lived together as husband and wife until 1935, when domestic discord arose and thereupon this action for annulment was commenced.

It is the contention of the plaintiff, and it was held by the official referee, that at the time of plaintiff's marriage with the defendant her first husband was still living, and that accordingly the second marriage was void, by reason of the provisions of section 6 of the Domestic Relations Law; and further, that the defendant did not come within the provision of subdivision 2 of that section, for the reason that her first husband had not been " finally sentenced to

* See, also, *Brookman* v. *Brookman* (161 Misc. 741).— [REP.

imprisonment for life." It appears to have been the theory of the official referee that had Montgomery been originally sentenced to imprisonment for life, that sentence, by force of the subdivision mentioned, would have dissolved the marriage, and the defendant would have been free to enter again the marriage state; but that a like result did not follow a sentence of death.

It will be noted that section 6 of the statute mentioned defines void marriages, but makes no reference to a criminal sentence, except the one, viz., final sentence to imprisonment for life. No reference is made in any part of the statute to a sentence of death.

Under our Penal Law, a sentence to State prison for a term of years for felony *suspends* during that time all civil rights, private trusts and powers (§ 510); and when sentenced to prison for life, the convict is *deemed civilly dead* (§ 511). At common law, a person convicted of felony was *civiliter mortuus* (*Troup* v. *Wood*, 4 Johns. Ch. *228, *248); and his loss of rights was broad in scope. As a result of one of these disabilities, his wife and family owed him no fealty nor obedience. (*Avery* v. *Everett*, 110 N. Y. 317, 323, 324, 329, 332, 333, and dissenting opinion by Earl, J.)

At common law there is no imprisonment for life, but that punishment was first prescribed by statute in 1796 (Chap. 30) and the attribute of civil death was attached thereto by specific and separate enactment (Laws of 1799, chap. 57), to conform the new penalty to the common-law rule with reference to the punishment of other felonies, but only " for greater caution." (*Troup* v. *Wood, supra,* p. *248.) Civil death, at common law, followed as a consequence of conviction of felony punishable by death, and in that particular the common law has not been altered by statute, but remains the same. Of course, the mere abstraction would be repellent that one sentenced to imprisonment for life is thereupon civilly dead, but one sentenced to death retains his personal, political and civil rights. Literally, the death sentence comprehends and contemplates imprisonment until the convict dies. But it is not necessary to resort to such implications, because the common law still holds him civilly dead who has been sentenced to death for felony.

By express provision of the statute, a second marriage of one whose former spouse has been sentenced to prison for life, is not invalid. (Domestic Relations Law, § 6, subd. 2.) The reason underlying the statute is evident from its antecedents. Life imprisonment not being a common-law penalty, but a statutory one, it was originally thought, for greater caution, that those upon whom this punishment was imposed should be formally classified *civiliter mortuus*. And the same precaution is carried into the Penal Law (§ 511), as well as into section 6, subdivision 2, of the

Domestic Relations Law, as it was into section 58 of that law (formerly chapter 206 of the Laws of 1822), viz., that a pardon granted to one imprisoned for life shall not *restore* the convict to his marital rights. And the Court of Appeals has said, in referring to the antecedent statute of our present section 341, subdivision 4, of the Penal Law (2 R. S. 687, § 9, subd. 6), containing a provision substantially the same: " The statute, without expressly declaring this result, assumes that a life sentence of the husband, *ipso facto*, dissolves his marriage." (*Avery* v. *Everett, supra,* p. 332.) Similarly, the antecedent statute of our present section 6, subdivision 2, of the Domestic Relations Law (2 R. S. of 1829, p. 139, § 5, subd. 2), contains language almost identical with that referred to in the *Avery* case. And while it was thought necessary in early legislation to provide particularly that one sentenced to prison for life (a new formula of punishment) was civilly dead, such particularity as to the death sentence was unnecessary under the general and well-understood common-law rule. So, by the common law, apart from the statutes in consonance with it, one finally sentenced to death is civilly dead, and his marriage is thereby dissolved, at least at the election of the other spouse.

The conclusion reached here is quite in accommodation with the present Domestic Relations Law. For section 6 provides: " A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either: 1. Such former marriage * * * has been dissolved for *a cause* other than the adultery of such person." By that language it is recognized and implied that a marriage may be *dissolved* for cause other than adultery, the only offense which, by statute, may form a basis for an action for the dissolution of a marriage in this State. And, as indicated in the *Avery* case, civil death is likewise a cause which, *ipso facto*, dissolves the marital tie. A judgment of dissolution is unnecessary. The defendant's first husband, at the time of the second marriage, was under final sentence of death, and accordingly was civilly dead; and she was free to remarry at that time, apart from the special and affirmative provisions of the Domestic Relations Law.

The decree of annulment should be reversed, with costs, and the complaint dismissed.

HILL, P. J., CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Decree of annulment reversed on the law and facts, with costs and complaint dismissed, with costs.