MAY E. BOND, Plaintiff, *v.* CHARLES H. BOND, Defendant.

Supreme Court, Special Term, New York County, April 3, 1937.

*Edward M. Edenbaum* [*T. J. Gillen* of counsel], for the plaintiff.

*Joseph Melcer* [*Alexander H. Rockmore* of counsel], for the defendant.

COTILLO, J. The plaintiff has applied to this court for an order pursuant to section 98 of the Civil Practice Act extending the plaintiff's time to move to strike out the first separate and distinct defense as it is contained in the second supplemental answer. In the event such order is granted she seeks a further order striking out the defense pursuant to section 279 of the Civil Practice Act and rule 109 of the Rules of Civil Practice.

The action is one instituted by the plaintiff seeking a legal separation from the defendant based upon two causes of action, the first because of cruel and inhuman conduct, and the second on the ground of abandonment. The defendant in his second supplemental answer has set up as an affirmative defense allegations that a court of competent jurisdiction in the Commonwealth of Massachusetts has declared in an action between these parties for divorce and separate maintenance that the marriage between the parties to this action is null and void for all purposes in the Commonwealth of Massachusetts. It is this defense the plaintiff now seeks permission to attack.

The parties to this proceeding are evidently of a very litigious disposition. They have appeared in various actions, both civil and criminal, in courts of at least three States.

The plaintiff first began her tour through the courts in the year 1924. In that year when she was eighteen years of age, because of difficulties that arose between her and her stepmother, she left her father's home and shortly thereafter met and married one Harry Fenton. The marriage she claims was never consummated by cohabitation. The papers, however, filed in the motion for alimony and counsel fees, indicate that it was. The papers seem to show that after this plaintiff and Fenton were married they lived together in New York at the home of a Mrs. Coleman. As a part of those papers, excerpts from a magazine article, in which an assistant district attorney of this county related the story of a crime committed by Fenton, were quoted in the defendant's answering affidavits. This article tells the story of the murder of Mary Coleman by Harry Fenton in the house in which Fenton lived with the plaintiff, and relates the plaintiff's story as told to the district attorney. In that story she stated that " I had been sick. I had an abortion performed on me and my husband took me around to Mrs. Coleman's to live." In relating the details of the murder she further says, " So then anyway he hit her and he dragged her into *my room*. He took a glass of water and threw it on me. And then he took a big axe and he hit her on this part of the head [indicating the top of head] and her skull went around. And he took a pair of my stock-

ings and tied her. And her face went all blue. And then he took a towel and put it around her mouth. Then he pulled out my bed and her mouth was bleeding. I had my bedclothes down and I took and threw them over. I didn't make the bed that day. The blood was on the sheet from her mouth. He laid her head toward the wall and he took a white spread and pulled it down. His clothes were bloody." When asked whether she slept in that room that night she answered: " Sure. I was getting up to walk up and down. I couldn't sleep." When asked if she slept in the same bed with Fenton she answered, " Sure." Fenton confessed to the murder and was on June 8, 1924, sentenced to Sing Sing from twenty years to life.

After the conviction of Fenton the plaintiff became a nurse, and in March, 1926, met the defendant, who at that time was a married man. Notwithstanding this fact she and he became engaged to marry in September, 1926. The plaintiff claims that the defendant's status was not revealed to her at that time. In December, 1926, the defendant, stating he was ill, went to California. There, through the evident consent and connivance of his wife, he secured a decree of divorce in that State. Under the terms of this decree, which became interlocutory on June 7, 1927, and final one year later, the defendant could not remarry for a period of one year in California. However, not wishing to wait for the expiration of this time the parties, upon the advice of a judge in Nevada, were married in that State and then went to live in Massachusetts. On February 28, 1928, at the insistence of the defendant, the parties adopted a baby. Thereafter they were advised by a Massachusetts lawyer that the marriage performed in Reno was void as to the State of Massachusetts and would not be recognized. Upon this lawyer's advice they came to New York, procured a marriage license and were married by the city clerk and lived together in New York city a week before returning to Massachusetts. Beginning in January, 1933, quarrels arose between the parties, evidently over the fact that the defendant's interest was aroused in other women and also because of his excessive drinking. This culminated in several criminal actions being instituted against them and also in a proceeding instituted by the defendant to void the adoption papers. This proceeding was dismissed and then the plaintiff in the courts of Massachusetts instituted an action for divorce and separate maintenance, to which action the defendant set up a defense that the marriage between him and the plaintiff was void because at the time they were married in Nevada he was legally disqualified from marrying and that when married in the State of New York the plaintiff was disqualified from marrying because she was already married and her husband was

living and undivorced. The trial of this action was had in the Probate Court of Hampden county in the Commonweath of Massachusetts and resulted in a decison by that court which decreed and adjudged: " that the libel be dismissed on the ground that the marriage ceremony performed in the State of Nevada was invalid under the laws of that State; that the marriage ceremony performed in the State of New York is null and void for all purposes in the Commonwealth of Massachusetts because at the time of the ceremony the parties resided and intended to continue to reside in the Commonwealth of Massachusetts and said Mary E. Bond had a husband then living." Thereafter both parties left Massachusetts and each settled in New York and are at the present time living and employed in New York. The pending action was commenced early in 1936 and the parties have continued their appearance before various courts. The defendant on the complaint of the plaintiff was several times arrested because of his attempts to injure the plaintiff, and several times convicted in the Magistrates' Court.

The reasons advanced by the plaintiff for permission to extend her time to strike out the affirmative defense is her inability through poverty to obtain certified copies of the Massachusetts decree. While this excuse is trite, nevertheless the court believes that the motion should be granted. Inasmuch as the ultimate relief sought if granted would, in the opinion of the court, necessarily shorten the duration of the trial itself, and in view of the fact that no prejudice can result to the defendant, the court will grant that portion of the motion.

The defendant in his opposition to granting the relief sought in the motion to strike out contends that the decree of the Probate Court of Massachusetts is entitled to receive full faith and credit in this court under article 4, section 1, of the Constitution of the United States. In support of this contention the defendant relies upon *Hubbard* v. *Hubbard* (228 N. Y. 81) and *Guggenheim* v. *Wahl* (203 id. 390). Article 4, section 1, of the Constitution of the United States reads as follows: " Full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State." The decisions submitted by the defendant are of no help to the court in the present situation. They do not involve the facts presented on this motion. In the present case the sole question to be determined is whether full faith and credit must be given to the decree of a sister State which declares a marriage performed in New York invalid when the legislative acts and decisions of the courts of this State in judicial proceedings are overruled and discarded by the judge of the sister State in arriving at his decision. In other words, must this court be dis-

abled from recognizing the laws and judicial decisions of this State because a judge of a sister State refuses to recognize them. No precedent for such a ruling has been submitted and the court after a diligent search has been unable to find one. Any such ruling would be repugnant and abhorrent to public policy and good morals in addition to working an injustice upon a citizen of this State. Under the law in this State the plaintiff at the time of her marriage to the defendant was eligible to marry, and no court of any other State could declare her marriage invalid in the State of New York.

The marriage of the plaintiff and the defendant in 1931 in the county, city and State of New York was legal and valid when made and is of binding force and effect.

Pursuant to the law of the State of New York, Domestic Relations Law, section 6, subdivision 2, which reads as follows:

" Void marriages. A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either: * * *

" 2. Such former husband or wife has been finally sentenced to imprisonment for life: "

and section 58 of the Domestic Relations Law, which reads as follows:

" Pardon not to restore marital rights. A pardon granted to a person sentenced to imprisonment for life within this State does not restore that person to the rights of a previous marriage or to the guardianship of a child, the issue of such a marriage."

and section 511 of the Penal Law, which reads as follows:

" Consequence of sentence to imprisonment for life. A person sentenced to imprisonment for life is thereafter deemed civilly dead."

the sentence of Harry Fenton, the first husband of the plaintiff, rendered him civilly and legally dead for all purposes.

In accordance with the case of *Gargan* v. *Sculley* (82 Misc. 667) the subsequent marriage of the plaintiff and the defendant herein is valid, binding and of full force and effect. There exists no necessity of an action to void such marriage, and the clerk of the marriage license bureau can by peremptory writ of mandamus be compelled to issue to the remaining spouse a marriage license so that another marriage can be entered into. That being the law in the State of New York, it might fairly be argued that its efficacy should have been recognized in the State of Massachusetts, pursuant to article 4, section 1, of the Constitution of the United States, which states that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State. The failure of Massachusetts to recognize the New York statute declaring

the first husband of the plaintiff judicially and civilly dead should not deprive plaintiff of her civil rights in this action. The State of New York, having created the marital *res*, has the interest in preserving such marital status, irrespective of what another State, which had no part in its creation, might say in its opinion. That status, created in New York, now is existent in New York by the residence of the plaintiff and the defendant who was served in New York at his place of employment February 15, 1936.

The case of *Gargan* v. *Sculley* (*supra*) reads as follows:

" MADDOX, J. * * * The relator and Weisheimer applied to the respondent for a marriage license. They presented the usual form of affidavit used for that purpose and also an affidavit by relator setting forth the fact of such conviction and sentence, together with a certified copy thereof. The application was refused, upon the sole ground, as stated by the assistant corporation counsel on the argument, that relator had a husband living and that the marital relation still continued undissolved and unimpaired by reason of said sentence; it was also contended by him that the minimum term of said sentence was the definite term thereof.

" By the provisions of the Penal Law ' a person sentenced to imprisonment for life is thereafter deemed civilly dead ' (section 511), and by the Domestic Relations Law (Consol. Laws 1909, c. 14) it is provided that 'A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either: (1) * * * (2) Such former husband or wife has been finally sentenced to imprisonment for life; (3) * * *.' (§ 6.)

" The conviction and sentence constitute the judgment in a criminal cause, and the word ' finally,' as used in the section last quoted relates to the finality of the judgment imposing the sentence. Here, the sentence was the final act and proceeding in the criminal cause; there is no suggestion of any subsequent proceeding, by way of review on appeal or otherwise, in the case, and it follows Gargan was ' finally sentenced.'

" A release upon parole under the statute is a matter of mercy and of favor. Under certain conditions the prisoner is permitted his liberty, but upon certain terms, and he is subject, for violation of law or of his parole, to summary arrest upon warrant and reconfinement under the original conviction and sentence. It is not a remission of the maximum term of his sentence.

" An absolute discharge from imprisonment is in effect a release only from confinement, legal custody, and control, for the remainder of the maximum term of the sentence; that is not a pardon, which under our present law can only be granted and issued by the Governor.

" It will be seen that a person sentenced to life imprisonment is thereafter deemed to be civilly dead; if he be civilly dead, that *ipso facto* dissolves the marital relation if the innocent spouse so elects; the innocent spouse has no right of action to dissolve the marriage because of such sentence, but, by the statute, her subsequent marriage during the life of the spouse who has been so sentenced is permissible and would not be void, nor is it voidable.

" The pardon of the person so sentenced ' does not restore that person to the rights of a previous marriage * * * ' (Domestic Relations Law, § 58), and the statutory discharge from imprisonment of a person so sentenced cannot restore the person thus discharged to his former marital rights."

This decision has recently been recognized and followed in *Jones* v. *Jones* (249 App. Div. 470), decided by the Appellate Division of the Third Department in an opinion by Mr. Justice McNAMEE.

This doctrine was also recognized by Justice CHURCH when he awarded alimony and counsel fee to the plaintiff in this action. The decision was never appealed by the defendant.  In view of the above, the court feels that the decree of Massachusetts cannot avail as a defense in this action and the motion to strike out is granted.  Settle order.