**Robert F. URBANO, Plaintiff-Appellant,**

v.

**NEWS SYNDICATE CO., Inc., Defendant-Appellee.**

**Docket 30354.**

United States Court of Appeals Second Circuit.

Submitted Oct. 4, 1965.

Decided March 11, 1966.

Lumbard, Chief Judge, dissented.

Robert F. Urbano, pro se.

James W. Rodgers, New York City, for appellee.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge:

Plaintiff in this libel action moves for leave to proceed *in forma pauperis* and for assignment of counsel in connection with an appeal from an order dismissing his complaint. We grant the motion for

leave to proceed on the appeal *in forma pauperis* and at the same time reverse the order from which the appeal is taken. Our action makes it unnecessary for plaintiff to have counsel assigned for the appeal.

Plaintiff is incarcerated in the New Jersey State Prison at Trenton under a sentence of life imprisonment. He has filed a complaint alleging that the defendant has libeled him and seeking damages for the libel.

The district court granted defendant's motion to dismiss the complaint on the ground of plaintiff's incapacity to sue. The district court based its action on New York Penal Law § 511(1) which provides:

"A person sentenced to imprisonment for life is thereafter deemed civilly dead."

■ Even if the district court was right in holding that incapacity to sue is a necessary incident of the concept of civil death, it was error to apply the law of New York rather than the law of plaintiff's domicile as required by Federal Rules of Civil Procedure, Rule 17(b). There was no showing that under the law of his domicile plaintiff was incapable of suing.

■ On the merits we are of the opinion, as was the district court, that the complaint is not so clearly frivolous as to justify dismissal "at this stage of the proceeding."

Application for leave to proceed *in forma pauperis* granted; application for assignment of counsel denied; order reversed and case remanded to the district court with direction to take jurisdiction of the action.

LUMBARD, Chief Judge (dissenting):

I disagree with the majority, and in light of the important questions of federal jurisprudence raised by this appeal, I think it necessary briefly to set forth my views.

Section 1915 of the Judicial Code, 28 U.S.C. § 1915(a), states that "Any court of the United States *may* authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor." Subsection (d) of Sec. 1915 provides that "The court *may* request an attorney to represent any such person unable to employ counsel and *may* dismiss the case * * * if satisfied that the action is frivolous or malicious." (Emphasis added.) It is well settled that exercise of the discretion to grant leave to proceed *in forma pauperis* under this statute involves an assessment of the merits of the plaintiff's action, e. g., Kinney v. Plymouth Rock Squab Co., 236 U.S. 43, 35 S.Ct. 236, 59 L.Ed. 457 (1915); Richardson v. Hatch, 134 F. Supp. 110 (W.D.Mich.1955) (and cases cited therein), and that the merits of the action will be more carefully scrutinized in a civil case than in a criminal appeal before leave to proceed is granted, see Weller v. Dickson, 314 F.2d 598, 600 (9th Cir. 1963).

The trial court granted defendant's motion to dismiss on the ground that Urbano lacked capacity to sue. N.Y.Penal Law, § 511. In my opinion, Urbano's action here is "frivolous" within the meaning of Sec. 1915(d). Thus, defendant's motion below to deny leave to proceed and to dismiss the complaint should have been granted, and I would deny Urbano's application to this court in all respects. A statement of the facts is necessary to support this conclusion.

On May 19, 1960, Urbano was sentenced to life imprisonment for a murder committed in the course of a New Jersey robbery; he was committed to a New Jersey State penitentiary where he is now serving his life sentence. On or about September 14, 1961, the Federal Bureau of Investigation issued a press release purporting to describe Urbano's criminal carrier, which had culminated in the robbery-murder for which he was convicted. On December 9, 1962, the defendant newspaper published a feature

story in its Sunday edition which traced Urbano's fantastic "triple life" as a bank and department store robber in Pennsylvania, Maryland and New Jersey, a "Continental playboy and bon vivant," and a secretive and temperamental vagabond member of a Williamstown, Massachusetts, family. This action for libel grew out of that newspaper feature.

It seems inconceivable that Urbano could succeed in this matter after a trial on the merits. Defendant claims that its article was based upon, and went no further than the FBI press release and therefore that the article was privileged. Although under New York law this claim depends upon whether the press release was a "judicial proceeding, legislative proceeding or other official proceeding," N.Y.Civil Rights Law, § 74 (McKinney's Consol.Laws, c. 6, 1965 Supp.), the existence of the report could at least be introduced as "mitigating circumstances" surrounding the sources of defendant's information and the grounds for its belief in the truth of the article, N.Y.Civil Rights Law, § 78 (McKinney's 1965 Supp.).

Even assuming that defendant's article went beyond the FBI release and included some material not entirely true, Urbano still must show that he was damaged by the publication. It seems highly improbable that he could show "actual malice" on the part of the newspaper; thus, under New York law he could not recover punitive damages. See Crane v. New York World Telegram Corp., 308 N.Y. 470, 476, 126 N.E.2d 753, 52 A.L.R.2d 1169 (1955). As for compensatory damages, it taxes credulity to assume that one serving a life sentence for robbery-murder could prove that a newspaper article attributing to him other crimes of a like nature either injured his reputation or caused him "pain and suffering" to any meaningful extent.

It is true that a libel per se, such as imputation of crime, is actionable without proof of damages. Prosser, Torts 584 (2d ed. 1955). But the question here

is not whether the action is cognizable but whether the federal courts should exercise their discretion to permit this suit at the taxpayers' expense.

As my brothers recognize, it would be unfair to any attorney to assign him to handle such a trial. I would go one step further and hold that this claim, while technically "actionable," is so devoid of merit on its facts as heretofore alleged that it should not be permitted to go to trial at the public's expense. While the federal courts should not permit incarceration effectively to deprive criminals of access to federal diversity jurisdiction to redress wrongs committed against their persons, either in prison or out, it is also important not to encourage suits by inmates that are instituted merely to harass public officials or publishers, to clutter the courts, or to provide a break in the monotony of prison life. Compare Higgins v. Steele, 195 F.2d 366, 369 (8 Cir. 1952); Mattheis v. Hoyt, 136 F.Supp. 119 (W.D.Mich.1955). Therefore, despite Judge Bonsal's dictum to the effect that if frivolity "were the only ground, the Court would not dismiss the action at this stage of the proceeding," I would affirm the lower court's decision on the ground that this is an inappropriate case for the granting of leave to proceed *in forma pauperis*.

The above ground being dispositive of the case, I need not reach the difficult question whether Urbano lacks capacity to bring this suit at all. However, I think it important to note the problems raised by an issue so cavalierly treated by the majority. In Hanna v. Plumer, 380 U.S. 460, 470, 85 S.Ct. 1136, 14 L.Ed. 2d 8 (1965), the Supreme Court noted that the mandate of Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, which might here imply that N.Y.Penal Law Sec. 511 is controlling of Urbano's capacity, has never been invoked to void a Federal Rule of Civil Procedure; the Court implied that where a Federal Rule was directly applicable to an issue, as Rule 17(b) [1]

---

1. "The capacity of an individual, other than one acting in a representative ca- pacity, to sue or be sued shall be determined by the law of his domicile."

is here, it is to be applied even in a diversity suit. But assuming that Massachusetts laws is therefore applicable,[2] the majority takes at best a cursory look at that law. If, as Judge Bonsal concluded, Massachusetts would declare Urbano civilly dead in her own courts, how can the majority conclude that Massachusetts would not intend the same rule to govern this case? And, if Massachusetts would in fact show so little concern for New York defendants, is this not a strong reason for applying the New York law in a federal court in New York, since the New York capacity rules "substantially affect those primary decisions respecting human conduct which our constitutional system leaves to state regulation"? Hanna v. Plumer, 380 U.S. at 475, 85 S.Ct. at 1146 (concurring opinion of Mr. Justice Harlan); see Hart and Wechsler, The Federal Courts and the Federal System 633–34, 678 (1953). Perhaps ultimately the question is so wrapped up in choice of law problems that Rule 17(b) as applied here runs contrary to the decision in Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), which held that the choice of law rules to be applied by a federal court in a diversity suit must conform to the rules prevailing in the forum state.

I am not necessarily willing to conclude, as did Judge Bonsal, that Urbano lacks capacity to bring this suit under New York law, because I am not at all certain that New York courts would consider Section 511 applicable.[3] Nevertheless, *if* under the laws of both Massachusetts and New York Urbano would lack capacity to

sue in the courts of either state, a proposition which the majority does not disprove, I do not see how a different result can be justified in a diversity action between a Massachusetts plaintiff and a New York defendant, regardless of how distasteful my brothers find the concept of "civil death."

I would deny Urbano's application in all respects.

---

2. Judge Bonsal held that Urbano's domicile is Massachusetts, his domicile prior to arrest, rather than New Jersey, the state of his incarceration, because Urbano is not voluntarily residing in New Jersey.

3. For one thing, it is not entirely clear that New York would apply Sec. 511 to bar suits by persons serving life sentences in other states. Compare Jones v. Jones, 249 App.Div. 470, 292 N.Y.S. 705, aff'd, 274 N.Y. 574, 10 N.E.2d 558 (1937), with Panko v. Endicott Johnson Corp., 24 F.Supp. 678 (N.D.N.Y.1938). For another, I have some doubt that Sec. 511

was intended to apply to this type of suit since N.Y.Penal Law, § 512-a provides that "any injury to his [a convict's] person * * * is punishable in the same manner as if he were not sentenced or convicted." Absent further guidance from the New York courts on this matter, I would hesitate to deny inmates access to the courts for redress of tortious injuries to their persons on the basis of an outdated and inscrutable common law concept. See Comment, The Rights of Prisoners While Incarcerated, 15 Buffalo L. Rev. 397, 398–404 (1965).