842 F.Supp. 718 (1993)
Theodore BAKER and all individuals similarly situated, Plaintiffs,
v.
Mario CUOMO, Governor of the State of New York and Thomas Coughlin, Commissioner of New York State Department of Correction Services, Defendants.
Raymond STRAWDER and all individuals similarly situated, Plaintiffs,
v.
Mario CUOMO, Governor of the State of New York and Thomas Coughlin, Commissioner of New York State Department of Correction Services, Defendants.
Milton GOODMAN and all individuals similarly situated, Plaintiffs,
v.
Mario CUOMO, Governor of the State of New York and Thomas Coughlin, Commissioner of New York State Department of Correction Services, Defendants.
Anthony CANADY and all individuals similarly situated, Plaintiffs,
v.
Mario CUOMO, Governor of the State of New York and Thomas Coughlin, Commissioner of New York State Department of Correction Services, Defendants.
Richard JACKSON and all individuals similarly situated, Plaintiffs,
v.
Mario CUOMO, Governor of the State of New York and Thomas Coughlin, Commissioner of New York State Department of Correction Services, Defendants.
Yohannes JOHNSON and all individuals similarly situated, Plaintiffs,
v.
Mario CUOMO, Governor of the State of New York and Thomas Coughlin, Commissioner of New York State Department of Correction Services, Defendants.
Mark SIMON and all individuals similarly situated, Plaintiffs,
v.
Mario CUOMO, Governor of the State of New York and Thomas Coughlin, Commissioner of New York State Department of Correction Services, Defendants.
Tyrone SANCHEZ and all individuals similarly situated, Plaintiffs,
v.
Mario CUOMO, Governor of the State of New York and Thomas Coughlin, Commissioner of New York State Department of Correction Services, Defendants.
Malcolm NELSON and all individuals similarly situated, Plaintiffs,
v.
Mario CUOMO, Governor of the State of New York and Thomas Coughlin, Commissioner of New York State Department of Correction Services, Defendants.
Nos. 93 Civ. 6839 (VLB), 93 Civ. 8420 (VLB) to 93 Civ. 8427 (VLB).
United States District Court, S.D. New York.
December 22, 1993.
*720 Theodore Baker, pro se.
Raymond Strawder, pro se.
Milton Goodman, pro se.
Anthony Canady, pro se.
Richard Jackson, pro se.
Yohannes Johnson, pro se.
Mark Simon, pro se.
Tyrone Sanchez, pro se.
Malcolm Nelson, pro se.

MEMORANDUM ORDER
VINCENT L. BRODERICK, District Judge.

I
These nine identical actions are brought under 42 U.S.C. § 1983 by prisoners at the Green Haven Correctional Facility (collectively, "plaintiffs"). Each action alleges unconstitutional deprivation of the right to vote because of incarceration for a felony conviction. Plaintiffs seek monetary damages of $1.50 per day, as well as declaratory and injunctive relief.
The related cases in the caption of this memorandum order are consolidated under the following caption:[1]
THEODORE BAKER, RAYMOND STRAWDER, MILTON GOODMAN, ANTHONY CANADY, RICHARD JACKSON, YOHANNES JOHNSON, MARK SIMON, TYRONE SANCHEZ, MALCOLM NELSON and all individuals similarly situated, Plaintiffs,

v.
MARIO CUOMO, Governor of the State of New York and THOMAS COUGHLIN, Commissioner of New York State Department of Correction Services, Defendants.

93 Civ 6839 (VLB)
All future filings should include this caption and case number.
Plaintiffs allege that New York Election Law § 5-106(2), which prohibits incarcerated felons from voting in federal, state, and local elections, unconstitutionally discriminates against Blacks and Hispanics, who allegedly comprise 87% of the total prison population and 25% of the population of New York state.

II
The case raises profound issues, but these have already been examined by the judiciary with uniform negative outcomes. If a different approach is to be taken, it would be more appropriate for such a step to be initiated by the higher courts rather than at the trial level. Unless this is to be done, appointment of counsel at the district court level or awaiting responses by the defendants would consume resources with little likelihood of benefit to plaintiffs or the public.
Because of the possibility that an appellate court may choose to appoint counsel at the appellate level or to grant relief, it may be useful to consider the variety of options which might be available were the existing rule to be re-examined.
The preponderance of minority groups in our prisons is a subject of profound concern. The ability of the judiciary to confront the underlying reasons for this phenomenon is limited.[2]
Under our system of justice, governed by if not always attaining due process and providing numerous safeguards to defendants, political empowerment of those convicted of crime cannot necessarily be assumed to be in the interest of citizens who are members of minority communities. The Equal Protection Clause and the federal Voting Rights *721 Act seek to protect such citizens.[3] The victims of crime are also predominantly members of minority groups, as eloquently pointed out by Representative Charles Rangel and former Manhattan Borough President William Sutton.[4]
Permitting prisoners to vote in local elections might swamp local electorates, depriving innocent citizens of the opportunity to guide the destiny of their municipalities or obtain representation at the county or state level. The resultant practical disenfranchisement of local residents would itself be unjustifiably discriminatory.[5] Moreover, local services in such political subdivisions are also usually separate from those provided in prisons, in regard to which prisoner franchise would be of greatest significance if local prisoner representation were to be required.
Prisoner voting at the statewide level or at the former residence of a prisoner is permitted in some states (see part IV below). An appellate court has not as yet, but might, determine that there is no sufficient reason for denying the franchise at that level to prisoners.
Were this to occur, the result would be to avoid reducing the total weight of the minority vote in the states and in voting for members of the Electoral College, while likewise avoiding discriminatory adverse discrimination against local citizens with the misfortune to live in a political subdivision containing a prison. A ruling of this type, if made, might be based on the importance of voting rights and weakness of contrary imperatives at the statewide level, thus avoiding the need for complex and controversial resort to statistical analyses.

III
Voting is a fundamental political right, Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220 (1886). Disenfranchisement of felons under state law, however, has been consistently upheld. Richardson v. Ramirez, 418 U.S. 24, 53, 94 S.Ct. 2655, 2670, 41 L.Ed.2d 551 (1974); Owens v. Barnes, 711 F.2d 25, 27 (3d Cir.), cert. denied, 464 U.S. 963, 104 S.Ct. 400, 78 L.Ed.2d 341 (1983); Green v. Board of Elections of City of New York, 380 F.2d 445, 451 (2d Cir.1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968).[6]
Section 2 of the Fourteenth Amendment provides that representation of a state in the House of Representatives and Electoral College may be reduced "when the right to vote at any election ... is denied ... or in any way abridged, except for participation in rebellion, or other crime" (emphasis supplied).
The Voting Rights Act, 42 U.S.C. § 1973(a) ("Voting Rights Act"), protects an individual's right to vote by prohibiting states from creating voter qualifications that result in discrimination based on race or color. This entails avoidance of vote dilution, which may occur when voting arrangements prevent effective use of the franchise. See White v. Regester, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973); Wesley v. Collins, 605 F.Supp. 802 (M.D.Tenn.1985), aff'd 791 F.2d 1255 (6th Cir.1986). The Voting Rights Act does not guarantee minority groups proportional representation but does guarantee everyone an opportunity equal to *722 that of others to obtain representation. Butts v. City of New York, 779 F.2d 141 (2d Cir.1985), cert. denied, 478 U.S. 1021, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986).
The legislative history of the Voting Rights Act, see S.Rep.No. 97-417, 97th Cong., 2d Sess. 27, reprinted in 1982 U.S.Code Cong. & Admin.News 177, 205 (hereinafter "Senate Report"), lists numerous factors to be considered by a court in weighing the totality of the circumstances analysis to determine if challenged election procedures violates the Act. See White v. Regester, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973); Zimmer v. McKeithen, 485 F.2d 1297 (5th Cir.1973), aff'd on other grounds sub nom East Carroll Parish School Bd. v. Marshall, 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976); Wesley v. Collins, 791 F.2d 1255, 1260 n. 5 (6th Cir.1986). Such factors are "neither exclusive nor controlling", and "the `totality of the circumstances' analysis requires a highly individualistic inquiry." Wesley, 791 F.2d at 1260.
Disproportionate racial impact of felon disenfranchisement on a minority voting population does not establish a violation of the Voting Rights Act absent other reasons to find discrimination. Id. at 1261. In concluding that a Tennessee statute which disenfranchised felons did not violate the Voting Rights Act, the court in Wesley held that disproportionate impact "does not `result' from the state's qualification of the right to vote on account of race or color," id. at 1262, but rather, "felons [are] disenfranchised because of their conscious decision to commit a criminal act for which they assume the risks of detention and punishment." Id.[7]

IV
Some states grant incarcerated felons the right to vote but the vast majority of states do not. This is pertinent although not controlling. Massachusetts allows incarcerated felons to vote in statewide elections, a fundamental right guaranteed by the state constitution,[8] and on the legal theory that incarcerated persons have the capacity to acquire domicile in Massachusetts.[9] See Dane v. Bd. of Registrars of Voters, 374 Mass. 152, 371 N.E.2d 1358 (1978). The court in Dane noted that the majority of states, including New York, do not allow felons to acquire domicile for purposes of voting. See Urbano v. News Syndicate Co., 232 F.Supp. 237, 239 n. 1 (S.D.N.Y.1964), rev'd on other grounds, 358 F.2d 145 (2d Cir.), cert. denied, 385 U.S. 831, 87 S.Ct. 68, 17 L.Ed.2d 66 (1966). Under Vermont law, for example, "[n]otwithstanding any other provision of law," a convicted criminal retains the right to vote by absentee ballot at the last voluntary residence, but may not acquire residence at the location of incarceration. 28 Vt.Stat.Ann. § 807.

V
Plaintiffs assert that disenfranchisement for crime amounts to taxation without representation. This argument has been rejected by the Ninth Circuit in an unpublished opinion, which, because of Ninth Circuit Rule 36-3, I do not cite as precedent but the reasoning of which is persuasive on its merits; no other cases dealing with this specific *723 contention have been found. In Gage v. Hawkins, 919 F.2d 144 (9th Cir.1990) (table), 1990 WL 186809, 1990 US App Lexis 20804, cert denied ___ U.S. ___, 111 S.Ct. 1688, 114 L.Ed.2d 83 (1991), the court denied a prisoner's claim of the right to register to vote or, in the alternative, to the return to him of all taxes paid during his imprisonment.

VI
Plaintiffs have requested appointment of counsel. Under 28 U.S.C. § 1915(d), a district court may exercise discretion in deciding whether counsel should be appointed for an indigent incarcerated litigant. Cooper v. A. Sargenti Co., 877 F.2d 170-172 (2d Cir.1989); Jenkins v. Chemical Bank, 721 F.2d 876, 879 (2d Cir.1983). The court must first determine whether the litigant's claim meets a threshold showing of merit. Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir.1986). Only if the litigant's position is likely to be of substance does the court then consider the plaintiffs ability to obtain representation, the ability to handle the case without assistance in light of the required factual investigation, the complexity of the legal issues, and the need for expertly conducted cross-examination to test veracity. Cooper, 877 F.2d at 172.
The merits of the indigent's claim is the primary factor in determining whether to appoint counsel. Id. at 170-72; Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986). Even if the claim is not frivolous, if the chances of succeeding on the merits are only slight, counsel may be denied because volunteer attorney time is a scarce commodity which must be allocated judiciously. "[E]very assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste." Cooper, 877 F.2d at 172.
Because of the lack of probability of success, appointment of counsel is denied.

VII
Plaintiffs may within 45 (forty-five) days of the date of this memorandum order respond to the considerations outlined above. Unless persuasive reasons not to do so are submitted, the complaints will then be dismissed for failure to state claims on which relief may be granted. This action will in that event be taken, on notice, under Fed.R.Civ.P. 1 and 12, rather than under 28 U.S.C. § 1915(d) relating to frivolous in forma pauperis complaints. See generally Denton v. Hernandez, ___ U.S. ___, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Defendants' time to answer or move is tolled pending action to be taken after the expiration of the 45-day period.
SO ORDERED.
NOTES
[1] Class certification is not discussed because all complaints will be dismissed unless cause to the contrary can be shown, as set forth below.
[2] See Toliver v. Sullivan Diagnostic Center, 812 F.Supp. 411 (S.D.N.Y.1993).
[3] For historic roots of judicial concern relating to adequacy of political representation for all groups of citizens, see United States v. Carolene Products Co, 304 U.S. 144, 152-53 n. 4, 58 S.Ct. 778, 783-84 n. 4, 82 L.Ed. 1234 (1938).
[4] See Stewart v. United States, 817 F.Supp. 12 (S.D.N.Y.1993).
[5] One can readily imagine the effect on a locality of a majority of voters consisting of prisoners electing a mayor who appointed a police commissioner chosen for acceptability to the constituency which put that mayor in office. The evils of faction foreseen in The Federalist No 10 (Madison) might well be significant, with impacts beyond the locality involved, and potentially indeed of national concern.

Placement of prison facilities carrying voting rights of the inmates into local communities would also make it difficult to obtain local acquiescence or cooperation. The "Not In My Backyard" ("NIMBY") objection would doubtless acquire additional notoriety.
[6] Even the ability of states to disenfranchise exfelons who have completed their sentence and parole has been upheld. Richardson v. Ramirez, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974); see Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948).
[7] The court also distinguished the Tennessee statute from the statute that was invalidated in Hunter v. Underwood, 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985). In Underwood, a provision of the Alabama constitution which disenfranchised those convicted of crimes of "moral turpitude" was invalidated as overly broad, and because it was enacted with the intent to discriminate against blacks.
[8] Unlike New York, Massachusetts has a constitutional provision which renders voting an "essential and unalienable right". Const., Commonwealth of Mass., Pt. 1, Art. 1. In Massachusetts, "the right to vote is a fundamental personal and political right. The equal right of all qualified to elect officers is one of the securities of the Declaration of Rights, Arts. 1-9." Attorney General v. Suffolk County Apportionment Comm'rs, 224 Mass. 598, 601, 113 N.E. 581 (1916). The basic constitutional qualifications are codified in Mass.Gen.Laws ch. 51 § 1.
[9] In Dane v. Bd. of Registrars of Voters, 374 Mass. 152, 371 N.E.2d 1358 (1978), an unsuccessful challenge by a registered voter to the voting rights of inmates of a prison, the court identified a rebuttable presumption that inmates have retained their former domicile for voting purposes. Mass.Gen.Law ch. 51 § 49 places the burden on prisoners to rebut this presumption by showing that they have formed the requisite intent to make the location of their incarceration their domicile. Id.